FILED
CLERK, U.S. DISTRICT COURT

7/29/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DD _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>RAMON OLORUNWA ABBAS,<br>  aka "Ray Hushpuppi,"<br>  aka "Hush,"<br><br>        Defendant. | CR No. 2:20-cr-00322-ODW<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering; 18 U.S.C. § 1956(a)(2)(B)(i): International Money Laundering; 18 U.S.C. § 1957: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 981 and 982 and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

A.  Defendant

1.  Defendant RAMON OLORUNWA ABBAS, also known as ("aka") "Ray Hushpuppi," aka "Hush," ("ABBAS"), was a resident of the United Arab Emirates.

//

//

B.   Bank Accounts

2.   The "Chase Account" was a bank account held at JP Morgan Chase Bank, N.A. ("Chase"), with the account number ending in 6628, which was held in Pearland, Texas.

3.   The "CIBC Account" was a bank account held at Canadian Imperial Bank of Commerce, with the account number ending in 1716, which was held in Ontario, Canada.

C.   Victims

4.   The "Victim Law Firm" was a law firm in the State of New York.

5.   The "Foreign Financial Institution" was a foreign bank located in a European country (the "European Country").

6.   The "Victim English Premier League Club" was a professional soccer club located in the United Kingdom.

7.   The "Victim U.K. Company" was a company located in the United Kingdom.

D.   Terminology

8.   A business email compromise ("BEC") fraud occurs when a hacker gains unauthorized access to an email account used by a business or company, blocks or redirects communications to and/or from the email account, and then uses the compromised email account or a separate fraudulent email account to communicate with personnel from a victim company (which may be the company to which the compromised account belongs, or another company doing business with that company), attempting to trick the victim-company personnel into making an unauthorized wire transfer.

9.   A cyber-heist occurs where a hacker gains access to the computer(s) of a bank without authorization and sends messages

2

through the Society for Worldwide Interbank Financial
Telecommunication ("SWIFT") communication system from the victim
bank's computer system, authorizing and causing fraudulent wire
transfers to bank accounts used and controlled by conspirators.

COUNT ONE

[18 U.S.C. § 1349]

10.   The United States Attorney re-alleges and incorporates here paragraphs 1 through 9 of the Introductory Allegations of this Information.

A.   OBJECT OF THE CONSPIRACY

11.   Beginning on an unknown date, but no later than on or about January 16, 2019, and continuing until on or about October 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABBAS, and unindicted coconspirator #1 ("UICC 1") and unindicted coconspirator #2 ("UICC 2"), together with others known and unknown to the United States Attorney, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

12.   The objects of the conspiracy were to be accomplished, in substance, as follows:

a.   Defendant ABBAS and UICC 1 would request from each other a bank account or bank accounts that could be used to receive fraudulently obtained funds, including funds that defendant ABBAS and UICC 1 knew were obtained from BEC and cyber-heist schemes through false or fraudulent pretenses, representations, and promises, and concealment of material facts.

b.   Defendant ABBAS and UICC 1 would, in response to such an inquiry, send to each other account information for a bank account or bank accounts that could be used to receive fraudulently obtained funds.  For such a bank account, defendant ABBAS and UICC 1 would, at

4

a minimum, send the bank account number and the SWIFT code, or the international bank account number ("IBAN").  The bank account would be opened in the name of a coconspirator or other person, to hide the fraudulent nature of the deposit, wire, or transfer, and to conceal and disguise the nature, location, source, ownership, and control of the proceeds, but would be used or controlled, directly or indirectly, by defendant ABBAS or UICC 1.

c.   Defendant ABBAS and UICC 1, or their coconspirators, would, through false or fraudulent pretenses, representations, and promises, and concealment of material facts, cause a victim to deposit, wire, or transfer funds into the bank account(s) that had been identified.

i.   In a BEC fraud scheme, a coconspirator would communicate with the victim-company -- fraudulently pretending to be a company doing business with the victim-company -- and would provide the victim-company with instructions to wire transfer a payment to the bank account(s) identified to receive fraudulently obtained funds.

ii.   In a cyber-heist scheme, a coconspirator would fraudulently send a message through the SWIFT system of the victim-bank, directing a wire transfer from the victim-bank to the bank account(s) identified to receive fraudulently obtained funds.

d.   Defendant ABBAS and UICC 1, or their coconspirators, would withdraw the fraudulently obtained funds from the bank account, and would further launder the funds through wire transfer(s) to additional bank accounts in the names of persons other than defendant ABBAS and UICC 1 and through other withdrawals -- sometimes with the assistance of additional coconspirators, such as UICC 2 -- so as to

obtain the money and so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

e.   Defendant ABBAS and UICC 1 attempted to fraudulently obtain and launder hundreds of millions of dollars in this manner.

C.   OVERT ACTS

13.   In furtherance of the conspiracy, and to accomplish its objects, defendant ABBAS, and UICC 1 and UICC 2, together with others known and unknown to the United States Attorney, on or about the dates set forth below, committed and caused to be committed various overt acts, in the Central District of California and elsewhere, including, but not limited to, the following:

Overt Act No. 1:   On or about January 18, 2019, in response to requests by UICC 1 for two bank accounts that could each receive €5 million wire transfers from a bank in the European Country, defendant ABBAS sent electronic messages providing the account information for a bank account in Romania, including the IBANs, and wrote, "I look forward from great result[.]"

Overt Act No. 2:   On or about January 18, 2019, in response to a request by UICC 1 about the "maximum amount" the Romanian bank account could "handle in 24hr," defendant ABBAS sent an electronic message stating, "It's for large amounts[.]"

Overt Act No. 3:   On or about January 18, 2019, in response to statements by UICC 1 that "[m]y associates want u to clear as soon it hits . . . Cuz a recall can be," and "if they don't notice we keep pumping," defendant ABBAS sent an electronic message stating, "Good."

Overt Act No. 4:   On or about February 10, 2019, after UICC 1 had told defendant ABBAS that he had "6 slots in total [¶] all 5m euro," and needed additional bank accounts to receive "big hit in

12th feb" that would "all credit same time," defendant ABBAS, in an electronic message, provided the account information for a bank account in Bulgaria, including the IBANs.

Overt Act No. 5:    On or about February 12, 2019, after UICC 1 had told defendant ABBAS that €500,000 had been wired to the Romanian bank account that defendant ABBAS had provided, defendant ABBAS stated, in an electronic message, "Ok let me hit my people up."

Overt Act No. 6:    On or about February 12, 2019, after UICC 1 told defendant ABBAS that the fraudulent wire transfer of €500,000 had come from the Foreign Financial Institution, and that "we still have access and they didn't realize , we gonna shoot again tomoro am," defendant ABBAS confirmed, through an electronic message, that UICC 1 should continue to use the Romanian bank account to receive funds, stating, "Yes please[.]"

Overt Act No. 7:    On or about February 12, 2019, defendant ABBAS sent UICC 1 an electronic message containing a photograph showing a computer screen displaying the website of a Romanian bank, which picture contained account numbers -- including IBANs -- and account balances for the Romanian bank account.

Overt Act No. 8:    On or about February 13, 2019, defendant ABBAS sent UICC 1 an electronic message containing a screenshot displaying the website of a Romanian bank, which picture contained account numbers -- including IBANs -- and account balances for the Romanian bank account.

Overt Act No. 9:    On or about March 10, 2019, in response to messages from UICC 1 requesting a bank account in Dubai for "5m" and stating "Brother I need it now or we will lose our chance pls," defendant ABBAS, through an electronic message, provided account

information for a bank account in Dubai, including an account number and IBAN.

Overt Act No. 10:   On or about May 8, 2019, in response to requests from UICC 1 for a bank account that could be used in a scheme to "swap" the account on file and that the account be able to "handle millions and not block," defendant ABBAS sent UICC 1 an electronic message containing the account information for a bank account in Mexico, including the account number and IBAN.

Overt Act No. 11:   On or about May 13, 2019, after UICC 1 told defendant ABBAS that the bank account in Mexico would be used to receive £100 million from the Victim English Premier League Club and £200 million from the Victim U.K. Company, and requested another bank account that could be used to receive fraudulent wire transfers, defendant ABBAS sent UICC 1 electronic messages stating, in part in coded language, that defendant ABBAS could not simply "keep collecting" bank accounts from other coconspirators and "keep asking for more," and further stating that the bank accounts "cost a lot of money now to open."

Overt Act No. 12:   On or about May 13, 2019, after UICC 1 told defendant ABBAS about the Victim English Premier League Club and the Victim U.K. Company, and also stated that UICC 1 had "10 more to do" and thus was "putting 2 contracts on each acc," defendant ABBAS agreed, through an electronic message, to provide additional bank accounts if the fraudulent transfers from the Victim English Premier League Club and the Victim U.K. Company were successful.

Overt Act No. 13:   On or about October 15, 2019, defendant ABBAS or a coconspirator fraudulently induced the Victim Law Firm to wire transfer approximately $922,857.76, from its account at Quontic

Bank, held in the State of New York, to the Chase Account, which was opened in the name of a person other than ABBAS or UICC 1.

Overt Act No. 14:   On or about October 17, 2019, defendant ABBAS sent UICC 1, through an electronic message, a photograph of a wire transfer confirmation relating to a wire transfer of approximately $396,050 from the Chase Account to the CIBC Account, which was opened in the name of UICC 2.

Overt Act No. 15:   On or about October 17, 2019, while UICC 2 was within the Central District of California, UICC 1 informed UICC 2, through an electronic message, to look for a wire transfer of approximately $396,050 to the CIBC Account.

Overt Act No. 16:   On or about October 17, 2019, while within the Central District of California, UICC 2 informed UICC 1, through an electronic message, that the sum of approximately $396,050 had been credited to the CIBC Account.

Overt Act No. 17:   On or about October 17, 2019, UICC 1 told defendant ABBAS, through an electronic message, that the wire transfer of approximately $396,050 from the Chase Account to the CIBC Account had been completed.

COUNT TWO

[18 U.S.C. § 1956(h)]

14. The United States Attorney re-alleges and incorporates here paragraphs 1 through 9 of the Introductory Allegations of this Information.

A. OBJECTS OF THE CONSPIRACY

15. Beginning on an unknown date, no later than on or about January 16, 2019, and continuing until on or about October 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABBAS, and unindicted coconspirator #1 ("UICC 1") and unindicted coconspirator #2 ("UICC 2"), together with others known and unknown to the United States Attorney, knowingly conspired:

a. to conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which, in fact, involved the proceeds of specified unlawful activity -- namely, wire fraud, in violation of Title 18, United States Code, Section 1343 -- and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to a place outside of the United States, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity -- namely, wire

10

fraud, in violation of Title 18, United States Code, Section 1343 --
and knowing that the transportation, transmittal, and transfer were
designed in whole and in part to conceal and disguise the nature,
location, source, ownership, and control of the proceeds, in
violation of Title 18, United States Code, Section 1956(a)(2)(B)(i);
and

        c.   to engage and attempt to engage in monetary
transactions involving criminally derived property of a value greater
than $10,000, affecting interstate and foreign commerce, which was
derived from specified unlawful activity -- namely, wire fraud, in
violation of Title 18, United States Code, Section 1343 -- and
knowing that the funds represented the proceeds of some form of
unlawful activity, in violation of Title 18, United States Code,
Section 1957.

B.   <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

    16.   The objects of the conspiracy were to be accomplished, in
substance, as follows:

        a.   The United States Attorney re-alleges and incorporates
here paragraphs 12.a through 12.e of Section B of Count One of this
Information.

C.   <u>OVERT ACTS</u>

    17.   In furtherance of the conspiracy, and to accomplish its
objects, defendant ABBAS, and UICC 1 and UICC 2, together with others
known and unknown to the United States Attorney, on or about the
dates set forth below, committed and caused to be committed various
overt acts, in the Central District of California and elsewhere,
including, but not limited to, the following:

//

<u>Overt Act Nos. 1-17:</u>  The United States Attorney re-alleges and incorporates here Overt Act Number 1 through Overt Act Number 17 of Section C of Count One of this Information.

<u>COUNT THREE</u>

[18 U.S.C. §§ 1956(a)(2)(B)(i); 2(a)]

18.   The United States Attorney re-alleges and incorporates here paragraphs 1 through 9 of the Introductory Allegations of this Information.

19.   On or about October 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABBAS, together with unindicted coconspirator #1 and unindicted coconspirator #2, and others known and unknown to the United States Attorney, each aiding and abetting the other, transported, transmitted, and transferred, and attempted to transport, transmit, and transfer, money from a place in the United States to and through a place outside the United States -- namely, a wire transfer of approximately $396,050 from the Chase Account to the CIBC Account -- knowing that the property involved represented the proceeds of some form of unlawful activity, and which transactions, in fact, involved the proceeds of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of such proceeds.

## COUNT FOUR

[18 U.S.C. §§ 1957; 2(a)]

20.  The United States Attorney re-alleges and incorporates here paragraphs 1 through 9 of the Introductory Allegations of this Information.

21.  On or about October 17, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant ABBAS, together with unindicted coconspirator #1 and unindicted coconspirator #2, and others known and unknown to the United States Attorney, each aiding and abetting the other, knowingly engaged in, attempted to engage in, and caused others to engage in and attempt to engage in a wire transfer of approximately $396,050 from the Chase Account to the CIBC Account, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the funds involved represented the proceeds of some form of unlawful activity.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

### FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts Two through Four of this Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an

16

1  intermediary who handled but did not retain the property in the
2  course of the money laundering offense unless the defendant, in
3  committing the offense or offenses giving rise to the forfeiture,
4  conducted three or more separate transactions involving a total of
5  $100,000.00 or more in any twelve-month period.

6

7                           NICOLA T. HANNA
                            United States Attorney
8

9

10                          CHRISTOPHER D. GRIGG
                            Assistant United States Attorney
11                          Chief, National Security Division

12                          CAMERON L. SCHROEDER
                            Assistant United States Attorney
13                          Chief, Cyber & Intellectual Property
                              Crimes Section
14
                            ANIL J. ANTONY
15                          Assistant United States Attorney
                            Deputy Chief, Cyber & Intellectual
16                            Property Crimes Section

17                          JOSEPH B. WOODRING
                            Assistant United States Attorney
18                          Cyber & Intellectual Property Crimes
                              Section
19

20

21

22

23

24

25

26

27

28

                                   17