TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6579
    Facsimile: (213) 894-2927
    E-mail:   anil.j.antony@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>RAMON OLORUNWA ABBAS,<br>  aka "Ray Hushpuppi,"<br>  aka "Hush,"<br><br>      Defendant. | No. 2:20-CR-00322-ODW<br><br>STIPULATION REGARDING REQUEST FOR (1) CONTINUANCE OF TRIAL DATE AND (2) FINDINGS OF EXCLUDABLE TIME PERIODS PURSUANT TO SPEEDY TRIAL ACT<br><br>**CURRENT TRIAL DATE:**  5/4/2021<br>**PROPOSED TRIAL DATE:**  7/27/2021 |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Anil J. Antony, and defendant RAMON OLORUNWA ABBAS, also known as ("aka") "Ray Hushpuppi," aka "Hush" ("defendant"), both individually and by and through his counsel of record, Louis J. Shapiro, hereby stipulate as follows:

    1.   The Information in this case was filed on July 29, 2020. Defendant first appeared before a judicial officer of the court in which the charges in this case were pending on August 17, 2020. The

Speedy Trial Act, 18 U.S.C. § 3161, originally required that the trial commence on or before October 26, 2020.

2. On August 17, 2020, the Court set a trial date of October 13, 2020.

3. On September 23, 2020, the Court continued the trial date to May 4, 2021 on the Court's own motion pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A). (Dkt. 26 (the "September 23 Order").) In continuing the trial date, the Court made findings that the continuance was necessary due to the unprecedented public health pandemic caused by the impact of COVID-19 on the population of the Central District of California. (Id.) The parties incorporate the Court's findings in the September 23 Order into this stipulation and agree that those findings, along with the further reasons set forth in this stipulation, provide good cause for a finding of excludable time and a continuance of the trial date to July 27, 2021.

4. Defendant is detained pending trial. The parties estimate that the trial in this matter will last approximately 7 days.

5. By this stipulation, defendant and the government move to continue the trial date to July 27, 2021. This is the first request for a continuance.

6. Defendant requests the continuance based upon the following facts, which the parties believe demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

 a. Defendant is charged with violation of 18 U.S.C. §§ 1349 (Conspiracy to Commit Wire Fraud), 1956(h) (Conspiracy to Engage in Money Laundering), 1956(a)(2)(B)(i) (International Money Laundering), and 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity). The government has

produced discovery to the defense, including more than 17,000 pages of documents and additional native files containing messaging conversations, photographs, audio recordings, business records from third parties, and reports by the Federal Bureau of Investigation ("FBI"). The government anticipates making additional discovery productions on a rolling basis, including additional data from search warrants.

   b. On February 25, 2021, defendant's current counsel, Louis J. Shapiro, substituted in as counsel of record. Defense counsel represents that he requires additional time to prepare this case for trial. Specifically, in light of the foregoing, and the complexity of the discovery and allegations in this case, counsel for defendant also represents that additional time is necessary to confer with defendant, conduct and complete an independent investigation of the case, conduct and complete additional legal research including for potential pre-trial motions, review the discovery and potential evidence in the case, and prepare for trial in the event that a pretrial resolution does not occur. Defense counsel represents that failure to grant the continuance would deny him reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

   c. Defendant believes that failure to grant the continuance will deny him continuity of counsel and adequate representation.

   d. The government does not object to the continuance.

   e. The requested continuance is not based on congestion of the Court's calendar, lack of diligent preparation on the part of the attorney for the government or the defense, or failure on the

part of the attorney for the Government to obtain available witnesses.

7. For purposes of computing the date under the Speedy Trial Act by which defendant's trial must commence, the parties agree that the time period of October 13, 2020 to July 27, 2021, inclusive, should be excluded pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv) because the delay results from a continuance granted at defendant's request, without government objection, on the basis of the Court's finding that: (i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; and (iii) failure to grant the continuance would unreasonably deny defendant continuity of counsel and would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

8. The parties further agree that the time between October 13, 2020 and July 27, 2021 should be excluded from the Speedy Trial Act under the ends-of-justice provision, 18 U.S.C. § 3161(h)(7)(A), based upon the following facts related to the COVID-19 pandemic, which the parties believe demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

    a. On March 13, 2020, following the President's declaration of a national emergency in response to COVID-19, the Court entered a General Order suspending jury selection and jury trials scheduled to begin before April 13, 2020. (C.D. Cal. General Order No. 20-02, In Re: Coronavirus Public Emergency, Order

Concerning Jury Trials and Other Proceedings (Mar. 13, 2020).) The Court subsequently continued that suspension through June 1, 2020. (C.D. Cal. General Order No. 20-05, In Re: Coronavirus Public Emergency, Further Order Concerning Jury Trials and Other Proceedings (Apr. 13, 2020).)

   b. Also on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities. (C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (March 13, 2020).) On March 19, 2020, by Order of the Chief Judge, the Court instituted its Continuity of Operations Plan ("COOP"), closing all Central District of California courthouses to the public (except for hearings on criminal duty matters) and taking other emergency actions. (C.D. Cal. Order of the Chief Judge No. 20-042 (March 19, 2020).) On March 29 and 31, recognizing COVID-19's continued spread in the community, the Court took further action: implementing video-teleconference and telephonic hearings and suspending all grand-jury proceedings. (C.D. Cal. Orders of the Chief Judge Nos. 20-043 (March 29, 2020) and 20-044 (March 31, 2020); see C.D. Cal. Order of the Chief Judge No. 20-186 (December 17, 2020) ("extend[ing] all findings and authorizations in Order of the Chief Judge No. 20-043 for an additional 90 days unless earlier terminated").)

   c. On May 28, 2020, the Court entered General Order 20-08, which extended the activation of the COOP Plan to at least June 22, 2020. (C.D. Cal. General Order 20-08, In Re: Coronavirus Public Emergency, Order Concerning Phased Reopening of the Court (May 28, 2020).) This extension order also set forth a plan for reopening, which was to occur in three phases. Phase 1 began on June 1 with the

5

return of certain staff to the courthouses to prepare for limited in-court hearings.  Phase 2 began on June 22, 2020, and involved the limited reopening of Central District courthouses for in-person hearings.  The final phase -- Phase 3 -- contemplated the resumption of jury trials.

      d.   In addition to temporarily suspending jury trials and in-court hearings, the Court has also adopted several measures to promote and protect public health and safety inside Central District courthouses.  For example, on March 13, 2020, the Court imposed health- and travel-related limitations on access to Court facilities, which remain in effect. (C.D. Cal. General Order No. 20-03, In Re: Coronavirus Public Emergency, Order Concerning Access to Court Facilities (Mar. 13, 2020).)  On June 1, 2020, by Order of the Chief Judge, the Court ordered that all individuals seeking entry to or occupying the courthouses within the Central District of California wear face coverings in all spaces.  (C.D. Cal. Order of the Chief Judge 20-078, In Re: Coronavirus Public Emergency, Use of Face Coverings in Court Facilities (June 1, 2020).)

      e.   The Court has also authorized the use of video and teleconference technology in certain criminal proceedings, finding that such in-person hearings "cannot be conducted in person without seriously jeopardizing public health and safety."  (C.D. Cal. Order of the Chief Judge No. 20-043, In Re: Coronavirus Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings, at 3 (Mar. 29, 2020).)  On June 26, 2020, by Order of the Chief Judge, the Court extended its authorization to conduct hearings by video and teleconference for an additional 90 days.  (C.D. Cal. Order of the Chief Judge No. 20-080, In Re: Coronavirus

Public Emergency, Use of Video and Telephonic Conference Technology in Certain Criminal Proceedings (June 26, 2020).)

      f.  On August 6 and September 14, 2020, the Court slightly relaxed its restrictions to permit in-person criminal hearings for defendants who do not consent to remote appearance and to allow up to 10 members of the public to attend. (General Order No. 20-09, at 2-3; C.D. Cal. General Order No. 20-12, In Re: Coronavirus Public Emergency Order Concerning Reopening of the Southern Division, at 2 (Sept. 14, 2020).) However, on December 7, 2020, following "an unprecedented surge of COVID-19 cases, hospitalizations, and test positivity rates in the Central District," the Court reinstituted its COOP Plan. (Order of the Chief Judge No. 20-179, at 1-2.) The COOP Plan suspended all grand jury proceedings and once again closed court facilities to the public except for hearings on certain criminal duty matters. (Order of the Chief Judge No. 20-179, at 2-3.) On January 6, 2021, the suspension was extended through and including January 29, 2021. (Order of the Chief Judge No. 21-002, at 2.) The COOP Plan expired on January 29, 2021, and the Court permitted the resumption of certain in-person hearings, but not jury trials, beginning on February 1, 2021. (See COOP Expiration Notice.)

      g.  The Court's orders were imposed based on (1) the California Governor's declaration of a public-health emergency in response to the spread of COVID-19, as well as (2) the Centers for Disease Control's advice regarding reducing the possibility of exposure to the virus and slowing the spread of the disease. (See, e.g., General Order 20-02, at 1.) The Chief Judge has recognized that, during the COVID-19 crisis, gatherings should be limited to no more than 10 people and elderly and other vulnerable people should

avoid person-to-person contact. (See Order of the Chief Judge No. 20-042, at 1-2.) The Court has more broadly recognized CDC guidance advising "precautions to reduce the possibility of exposure to the virus and slow the spread of the disease[.]" (General Order 20-09, at 1.)

  h. The Court's September 23 Order continued the trial date to May 4, 2021 on the Court's own motion pursuant to the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), finding that a continuance is necessary due to the unprecedented public health pandemic caused by the impact of COVID-19 on the population of the Central District of California. (ECF No. 26.)

  i. Local and state governments have adopted similar policies. On March 19, 2020, both Los Angeles Mayor Eric Garcetti and California Governor Gavin Newsom issued emergency orders requiring residents to "stay home," subject to limited exceptions. California Executive Order N-33-20 (March 19, 2020); accord Safer at Home, Public Order Under City of Los Angeles Emergency Authority ¶ 1 (March 19, 2020). Subject to similarly limited exceptions, all travel was prohibited. Safer At Home ¶ 4. Non-essential businesses requiring in-person attendance by workers were ordered to cease operations. Id. ¶ 2. All schools in the Los Angeles Unified School District remain closed to in-person classes.

  j. On December 3, 2020, the Acting State Public Health Officer of the State of California issued a Regional Stay at Home Order based on the "unprecedented surge in the level of community spread of COVID-19." (California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020).) That order went into effect on December 6, 2020 and restricted business and social activities, including by

suspending outdoor restaurant operations, in California regions for which ICU bed capacity is less than 15%.  As the Chief Judge's December 7, 2020 Order reactivating the COOP Plan recognized, ICU availability in the Southern California region, which includes the entire Central District, fell below 15% as soon as the Regional Stay at Home Order went into effect.  (Order of the Chief Judge No. 20-179, at 2.)  When the COOP Plan was extended on January 6, 2021, ICU availability in the Southern California region was at 0.0%.  (Order of the Chief Judge 21-002, at 1.)  Although the Regional Stay at Home Order was lifted on January 25, 2021, ICU availability has increased, and case numbers have declined, COVID-19 remains extremely dangerous, and California counties remain subject to various restrictions, depending on their tier.  (See "Blueprint for a Safer Economy," https://covid19.ca.gov/safer-economy/ (last visited March 9, 2021).)

      k.  As these measures reflect, the coronavirus pandemic is a global emergency that is unprecedented in modern history.  As data from both the Centers for Disease Control and the California Department of Public Health reflect, the virus has spread through the United States community at an alarming rate.  (See Coronavirus Disease 2019 (COVID-19) in the U.S., Centers for Disease Control and Prevention (updated daily), available at https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html; Coronavirus Disease 2019 (COVID-19), California Department of Public Health (updated daily), available at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Immunization/ncov2019.aspx.)  The death toll, across the world, is staggering.

      l.  Based on these facts, the Court's August 2020 order concluded that it was necessary to suspend criminal jury trials until

further notice "in order to protect public health, and in order to reduce the size of public gatherings and reduce unnecessary travel." (General Order 20-09, at 1.)  Given the increased rates of COVID-19-related hospitalization and death over the 30 days preceding the August 2020 order, the Court found that "holding jury trials substantially increases the chances of transmitting the Coronavirus," and it would thus "place prospective jurors, defendant, attorneys, and court personnel at unnecessary risk." (Id. at 3.)  The Court concluded that suspending jury trials thus served the ends of justice and outweighed the interests of the public and defendants in a speedy trial.  (Id.)  The Central District of California has not yet devised and adopted protocols for safely conducting jury trials.

9.   Nothing in this stipulation shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods be excluded from the period within which trial must commence. Moreover, the same provisions and/or other provisions of the Speedy

//
//
//

10

Trial Act may in the future authorize the exclusion of additional time periods from the period within which trial must commence.

IT IS SO STIPULATED.

Dated: March 10, 2021　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　TRACY L. WILKISON
　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　CHRISTOPHER D. GRIGG
　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　Chief, National Security Division

　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　ANIL J. ANTONY
　　　　　　　　　　　　　　　　　Assistant United States Attorney

　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

　　　I am RAMON OLORUNWA ABBAS' attorney. I have carefully discussed every part of this stipulation and the continuance of the trial date with my client. I have fully informed my client of his Speedy Trial rights. To my knowledge, my client understands those rights and agrees to waive them. I believe that my client's decision to give up the right to be brought to trial earlier than July 27, 2021 is an informed and voluntary one.

*Lou Shapiro*　　　　　　　　　　　3/18/21

LOUIS J. SHAPIRO　　　　　　　　　Date
Attorney for Defendant
RAMON OLORUNWA ABBAS

　　　I have read this stipulation in English, a language in which I am fluent, and I have carefully discussed it with my attorney. I understand my Speedy Trial rights. I voluntarily agree to the

//

//

11

1  continuance of the trial date, and give up my right to be brought to
2  trial earlier than July 27, 2021.

3  _____        ___3-18-21_____
4  RAMON OLORUNWA ABBAS                       Date
   Defendant