TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
ANIL J. ANTONY (Cal. Bar No. 258839)
Assistant United States Attorney
Deputy Chief, Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6579
    Facsimile: (213) 894-2927
    Email:    anil.j.antony@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-CR-00322-ODW |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT RAMON OLORUNWA ABBAS |
| v. | |
| RAMON OLORUNWA ABBAS,<br>  aka "Ray Hushpuppi,"<br>  aka "Hush," | |
| Defendant. | |

1.    This constitutes the plea agreement between defendant RAMON OLORUNWA ABBAS, also known as ("aka") "Ray Hushpuppi," aka "Hush," ("defendant"), and the United States Attorney's Office for the Central District of California ("the USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

1        a.   Give up the right to indictment by a grand jury and,

2 at the earliest opportunity requested by the USAO and provided by the

3 Court, appear and plead guilty to Count Two of the Information in

4 United States v. Ramon Olorunwa Abbas, Case No. 2:20-CR-00322-ODW,

5 which charges defendant with Conspiracy to Engage in Money

6 Laundering, in violation of 18 U.S.C. § 1956(h).

7        b.   Not contest facts agreed to in this agreement.

8        c.   Abide by all agreements regarding sentencing contained

9 in this agreement.

10        d.   Agree that all court appearances, including his change

11 of plea hearing and sentencing hearing, may proceed by video-

12 teleconference ("VTC") or telephone, if VTC is not reasonably

13 available, so long as such appearances are authorized by Order of the

14 Chief Judge 20-043 or another order, rule, or statute.  Defendant

15 understands that, under the United States Constitution, the United

16 States Code, and the Federal Rules of Criminal Procedure (including

17 Rules 11, 32, and 43), he may have the right to be physically present

18 at these hearings.  Defendant understands that right and, after

19 consulting with counsel, voluntarily agrees to waive it and to

20 proceed remotely.  Defense counsel also joins in this consent,

21 agreement, and waiver.  Specifically, this agreement includes, but is

22 not limited to, the following:

23        i.   Defendant consents under Section 15002(b) of the

24 CARES Act to proceed with his change of plea hearing by VTC or

25 telephone, if VTC is not reasonably available.

26        ii.   Defendant consents under Section 15002(b) of the

27 CARES Act to proceed with his sentencing hearing by VTC or telephone,

28 if VTC is not reasonably available.

1           iii. Defendant consents under 18 U.S.C. § 3148 and

2   Section 15002(b) of the CARES Act to proceed with any hearing

3   regarding alleged violations of the conditions of pretrial release by

4   VTC or telephone, if VTC is not reasonably available.

5        e.   Appear for all court appearances, surrender as ordered

6   for service of sentence, obey all conditions of any bond, and obey

7   any other ongoing court order in this matter.

8        f.   Not commit any crime; however, offenses that would be

9   excluded for sentencing purposes under United States Sentencing

10  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

11  within the scope of this agreement.

12       g.   Be truthful at all times with the United States

13  Probation and Pretrial Services Office and the Court.

14       h.   Pay the applicable special assessment at or before the

15  time of sentencing unless defendant has demonstrated a lack of

16  ability to pay such assessments.



1   ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3   ▮▮▮▮▮▮▮▮▮▮
4   ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
5   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
6   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
8   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
10  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

11                  THE USAO'S OBLIGATIONS

12      5.    The USAO agrees to:

13          a.    Not contest facts agreed to in this agreement.

14          b.    Abide by all agreements regarding sentencing contained

15  in this agreement.

16          c.    At the time of sentencing, move to dismiss the

17  remaining counts of the Information in United States v. Ramon

18  Olorunwa Abbas, Case No. 2:20-CR-00322-ODW, as against defendant.

19  Defendant agrees, however, that at the time of sentencing the Court

20  may consider any dismissed charges in determining the applicable

21  Sentencing Guidelines range, the propriety and extent of any

22  departure from that range, and the sentence to be imposed.

23          d.    After defendant enters a plea of guilty to Count Two

24  of the Information in United States v. Ramon Olorunwa Abbas, Case No.

25  2:20-CR-00322-ODW, move to dismiss the Complaint in United States v.

26  Ramon Olorunwa Abbas, et al., Case No. 2:21-MJ-00760, as against

27  defendant.  Defendant agrees, however, that at the time of sentencing

28  the Court may consider any dismissed charges in determining the

                                    4

applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

e.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

f.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1956(h) (Conspiracy to Engage in Money Laundering); 1349 (Conspiracy to Commit Wire Fraud, Mail Fraud, and Bank Fraud); 1343 (Wire Fraud); § 1344 (Bank Fraud); 1956 (Money Laundering); 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity); and 1028A (Aggravated Identity Theft) arising out of: (i) defendant's conduct described in the agreed-to factual basis set forth in paragraph 15 below; (ii) evidence obtained by FBI during the search of defendant's cell phone, pursuant to a search warrant obtained on or about August 12, 2020; and (c) evidence seized by FBI during searches of defendant's online accounts, pursuant to search warrants obtained on or about April 23, 2020.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be



imposed after consideration of the Sentencing Guidelines and all
other relevant factors under 18 U.S.C. § 3553(a).



e.

NATURE OF THE OFFENSE

8.   Defendant understands that for defendant to be guilty of the crime charged in Count Two of the Information, that is, Conspiracy to Engage in Money Laundering, in violation of 18 U.S.C. § 1956(h), the following must be true:

a.   There was an agreement between two or more persons:

i.   to conduct a financial transaction involving property that represented the proceeds of wire fraud (in violation of Title 18, United States Code, Section 1343), where defendant knew that the property represented the proceeds of some form of unlawful activity, and defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of the proceeds; or

ii.   to transport, transmit, or transfer, or attempt to transport, transmit, or transfer, from a place in the United States to or through a place outside the United States, a monetary instrument or funds, which defendant knew represented the proceeds of some form of unlawful activity, and defendant knew that the transaction was designed in whole or in part to conceal or disguise

8

the nature, location, source, ownership, or control of the proceeds of wire fraud (in violation of Title 18, United States Code, Section 1343); or

iii. to knowingly engage or attempt to engage in a monetary transaction in the United States in criminally derived property that had a value greater than $10,000 and was, in fact, derived from wire fraud (in violation of Title 18, United States Code, Section 1343); and

b.   defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

## PENALTIES AND RESTITUTION

9.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(h), as charged in the Information, is: 20 years' imprisonment; a 3-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

10.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct,

1   as defined in U.S.S.G. § 1B1.3, in connection with the offense to
2   which defendant is pleading guilty; and (b) any counts dismissed and
3   charges not prosecuted pursuant to this agreement as well as all
4   relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with
5   those counts and charges.  The parties currently believe that the
6   applicable amount of restitution is approximately $1,732,841.34, but
7   recognize and agree that this amount could change based on facts that
8   come to the attention of the parties prior to sentencing.

9       11.  Defendant agrees that any and all fines and/or restitution
10  ordered by the Court will be due immediately.  The government is not
11  precluded from pursuing, in excess of any payment schedule set by the
12  Court, any and all available remedies by which to satisfy defendant's
13  payment of the full financial obligation, including referral to the
14  Treasury Offset Program.

15      12.  Defendant understands that supervised release is a period
16  of time following imprisonment during which defendant will be subject
17  to various restrictions and requirements.  Defendant understands that
18  if defendant violates one or more of the conditions of any supervised
19  release imposed, defendant may be returned to prison for all or part
20  of the term of supervised release authorized by statute for the
21  offense that resulted in the term of supervised release, which could
22  result in defendant serving a total term of imprisonment greater than
23  the statutory maximum stated above.

24      13.  Defendant understands that, by pleading guilty, defendant
25  may be giving up valuable government benefits and valuable civic
26  rights, such as the right to vote, the right to possess a firearm,
27  the right to hold office, and the right to serve on a jury.
28  Defendant understands that he is pleading guilty to a felony and that

1   it is a federal crime for a convicted felon to possess a firearm or

2   ammunition.  Defendant understands that the conviction in this case

3   may also subject defendant to various other collateral consequences,

4   including but not limited to revocation of probation, parole, or

5   supervised release in another case and suspension or revocation of a

6   professional license.  Defendant understands that unanticipated

7   collateral consequences will not serve as grounds to withdraw

8   defendant's guilty plea.

9       14.  Defendant and his counsel have discussed the fact that, and

10  defendant understands that, if defendant is not a United States

11  citizen, the conviction in this case makes it practically inevitable

12  and a virtual certainty that defendant will be removed or deported

13  from the United States.  Defendant may also be denied United States

14  citizenship and admission to the United States in the future.

15  Defendant understands that while there may be arguments that

16  defendant can raise in immigration proceedings to avoid or delay

17  removal, removal is presumptively mandatory and a virtual certainty

18  in this case.  Defendant further understands that removal and

19  immigration consequences are the subject of a separate proceeding and

20  that no one, including his attorney or the Court, can predict to an

21  absolute certainty the effect of his conviction on his immigration

22  status.  Defendant nevertheless affirms that he wants to plead guilty

23  regardless of any immigration consequences that his plea may entail,

24  even if the consequence is automatic removal from the United States.

25                            FACTUAL BASIS

26      15.  Defendant admits that defendant is, in fact, guilty of the

27  offense to which defendant is agreeing to plead guilty.  Defendant

28  and the USAO agree to the statement of facts provided below and agree

11

that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 17 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning no later than on or about January 18, 2019, through on or about June 9, 2020, defendant knowingly combined, agreed, and conspired with multiple other persons ("coconspirators") to conduct financial transactions into, within, and outside the United States involving property that represented the proceeds of wire fraud. These coconspirators included the persons referred to in the Information as UICC 1 and UICC 2, as well as other coconspirators not referred to in the Information.  The coconspirators targeted multiple victims and laundered and/or attempted to launder funds fraudulently obtained, and attempted to be fraudulently obtained, through bank cyber-heists,[1] business email compromise ("BEC") frauds,[2] and other fraud schemes.  The intended victims of the conspiracy included the victims identified in the Information as the Foreign Financial Institution (which was a bank in Malta), the Victim Law Firm (located in New York State), and two companies located in the United Kingdom.

---

[1] A cyber-heist typically occurs where a hacker has gained access to the computer(s) of a bank without authorization and sent messages through the Society for Worldwide Interbank Financial Telecommunication ("SWIFT") communication system from the victim bank's computer system, authorizing and causing fraudulent wire transfers to bank accounts used and controlled by coconspirators.

[2] BEC schemes typically involve a hacker gaining unauthorized access to a business email account, and attempting to trick a victim into making an unauthorized wire transfer.

Defendant admits that he conspired with UICC 1 and others to defraud these victims and conspired to launder funds obtained from them in the manner described in the Information, and that it was reasonably foreseeable to defendant that the schemes intended to defraud these victims of the amounts listed below.  Defendant also admits the truth of the allegations in Overt Acts 1 to 17.  Defendant knew that the property obtained and attempted to be obtained represented, and would represent, the proceeds of some form of unlawful activity; that the transactions were, and would be, designed in whole or in part to conceal or disguise the nature, location, source, ownership, and control of the proceeds; and that the transactions with these criminally derived proceeds, at times, exceeded $10,000.  Defendant became a member of the conspiracy knowing of its objects and intending to help accomplish them. Multiple members of the conspiracy took steps in furtherance of it, including defendant, as described in Overt Acts 1 to 17 and below.

Defendant would sometimes communicate with individuals committing fraud ("fraudsters"), or middle-men for fraudsters, who sought bank accounts into which they could fraudulently induce victims to deposit or transfer funds.  These individuals included UICC 1 and others.  Defendant knew that these fraudulent schemes included bank cyber-heists, BEC schemes, and other fraud schemes. The Foreign Financial Institution (a bank in Malta) was an intended victim of a cyber-heist, while the other victims identified above were victims of BEC schemes.  For example, as to the BEC schemes involving the victim companies in the United Kingdom, defendant and UICC 1 discussed, on May 12, 2019, how the fraud schemes were anticipated to result in fraudulent payments of approximately £6

million per week.  The fraudsters perpetrating these schemes, along with the middle-men, were largely located outside the United States.

Once a victim deposited funds into a bank account, defendant would coordinate with other coconspirators to obtain or move the funds, and then to further launder the funds.  This sometimes involved a coconspirator sending the funds to other bank accounts used or controlled by coconspirators through international wires, withdrawing funds through checks or as cash, or further laundering funds.  For instance, defendant conspired with UICC 1 to use the bank account identified in the Information as the CIBC Account, which was held in Ontario, Canada by UICC 2, to launder funds obtained from the Victim Law Firm.

In addition to admitting defendant's involvement in schemes intending to defraud the victims listed above, defendant admits the following facts regarding his involvement in a scheme to defraud a victim company in Qatar that was building an international school (the "Qatari Victim Company") and the owner of that company (the "Victim Businessperson").  Defendant agrees that his acts in furtherance of this scheme are relevant conduct, as defined in U.S.S.G. § 1B1.3.

In or around December 2019, defendant began conspiring with a coconspirator ("Coconspirator A") to defraud the Victim Businessperson, who was seeking a lender to invest $15,000,000 in a project to build an international school.  Coconspirator A had already defrauded the Victim Businessperson of funds at the time that defendant joined the scheme.  Beginning on or around December 11, 2019, defendant began to communicate with the Victim Businessperson, fraudulently using the name "Malik."  As "Malik," defendant falsely

told the Victim Businessperson that he would assist the Victim
Businessperson in opening a bank account in the United States where
the $15,000,000 loan could initially be deposited.  In truth,
defendant and Coconspirator A did not intend to assist the Victim
Businessperson in securing a loan; they were defrauding the Victim
Businessperson.

In order to further the fraud scheme, defendant arranged for a
coconspirator ("Coconspirator B") to open a bank account at Wells
Fargo Bank in Canoga Park, California in the name of the Qatari
Victim Company, which also included filing a fictitious business name
statement with the Los Angeles County Registrar/Recorder's Office in
order to register the fictitious business entity.  After
Coconspirator B arranged to file the fictitious business name
statement and open the Wells Fargo bank account ending in 5320 (the
"Wells Fargo Account"), defendant directed a coconspirator in Nigeria
("Coconspirator C") to create a false and fraudulent "power of
attorney" document bearing the name of the Qatari Victim Company.
Defendant then sent information relating to the Wells Fargo Account,
as well as the "power of attorney" document, to the Victim
Businessperson on or about December 19 and 20, 2019, in order to
further the fraud scheme.

Between approximately December 19, 2019 and December 24, 2019,
Coconspirator A and defendant each corresponded with the Victim
Businessperson to fraudulently induce the Victim Businessperson to
pay approximately $330,000 to fund the opening of a purported
"investor's account" in order to facilitate the transfer of the
$15,000,000 loan they promised the Victim Businessperson.  Defendant,
specifically, directed the Victim Businessperson to make wire

transfers of $230,000 to a Wells Fargo bank account of a luxury watch-seller and $100,000 to a Capital One bank account of a coconspirator ("Coconspirator D").  The Victim Businessperson made those wire transfers to these bank accounts, both of which were in the United States, on or about December 26, 2019.

Defendant used the funds from those wire transfers for his personal benefit, and none of the funds were used as defendant and Coconspirator A promised the Victim Businessperson.  Defendant used the wire transfer of $230,000 to purchase a luxury Richard Mille RM11-03 watch.  Defendant arranged for the watch-seller to have the watch available in the New York metropolitan area, where Coconspirator D picked it up.  Coconspirator D -- coordinating with another coconspirator ("Coconspirator E") -- arranged to have the watch delivered to a different coconspirator ("Coconspirator F"). Defendant then directed Coconspirator F to transport the watch on a flight from John F. Kennedy International Airport in New York to the United Arab Emirates, where Coconspirator F delivered the watch to defendant on or about January 4, 2020.

As to the $100,000 wire transfer to Coconspirator D, defendant directed Coconspirator D to withdraw the funds and convert a portion of them -- minus $8,000 for Coconspirator D, which was her cut -- to Nigerian Naira, which she would then send to coconspirators who would deliver the funds to defendant using transfers between Nigerian bank accounts.  Defendant also arranged to have Coconspirator D send cashier's checks of $40,000 and $10,000 to persons specified by a coconspirator ("Coconspirator G") who would use the funds to obtain St. Christopher (St. Kitts) and Nevis citizenship and a passport for defendant.  Defendant received the passport in February 2020.

16

Between approximately January 8, 2020 and February 4, 2020 defendant and Coconspirator A each corresponded with the Victim Businessperson, attempting to fraudulently induce the Victim Businessperson to pay $575,000 in purported "taxes" to release the $15,000,000 loan that the Victim Businessperson was expecting. Between approximately February 5, 2020 and February 7, 2020 the Victim Businessperson wire transferred approximately $299,983.58 to bank accounts specified by Coconspirator A in Kenya.

On or about March 2, 2020, defendant fraudulently induced the Victim Businessperson to send additional wire transfers to U.S. bank accounts of $100,000 to Coconspirator D and $80,000 to a different coconspirator ("Coconspirator H"). The funds from these payments were subsequently laundered through a variety of means, with the assistance of Coconspirators D, E, G, and H.

Defendant admits to the following approximate actual or intended loss amounts, foreseeable to him, in connection with the victims identified in the Information and this Plea Agreement:

- Foreign Financial Institution: approximately $14,700,000.00 (€13,000,000);
- Victim Companies in the U.K.: approximately $7,740,000.00 (£6,000,000);
- Victim Law Firm: $922,857.76; and
- Victim Businessperson and Qatari Victim Company: $809,983.58.

Defendant admits that all of the money laundering described above was sophisticated, extensive, and involved multiple persons.

SENTENCING FACTORS

16.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

17.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Underlying Offense Level: | 7 | [U.S.S.G. §§ 2S1.1(a)(1), 2B1.1(a)(1)] |
| Fraud scheme outside the U.S./sophisticated means | +2 | [U.S.S.G. § 2B1.1(b)(10)(B) & (C)] |
| Conviction under 18 U.S.C. § 1956 | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Sophisticated laundering | +2 | [U.S.S.G. § 2S1.1(b)(3)] |

The parties further agree that a loss amount between $9,500,000 and $25,000,000, corresponding to a +20 offense level increase under U.S.S.G. § 2B1.1(b)(1)(K), is a reasonable and appropriate estimate of defendant's intended loss, and adequately accounts for the seriousness of the offense.

1    Defendant and the USAO reserve the right to argue that
2    additional specific offense characteristics, adjustments, and
3    departures under the Sentencing Guidelines are appropriate.

4    Defendant specifically reserves the right to argue for a
5    reduction in his sentence due to the conditions of his confinement in
6    the Central District of California during the COVID-19 pandemic.

7    18.  Defendant understands that there is no agreement as to
8    defendant's criminal history or criminal history category.

9    19.  Defendant and the USAO reserve the right to argue for a
10   sentence outside the sentencing range established by the Sentencing
11   Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
12   (a)(2), (a)(3), (a)(6), and (a)(7).

13                   WAIVER OF CONSTITUTIONAL RIGHTS

14   20.  Defendant understands that by pleading guilty, defendant
15   gives up the following rights:

16        a.   The right to persist in a plea of not guilty.

17        b.   The right to a speedy and public trial by jury.

18        c.   The right to be represented by counsel -- and if
19   necessary have the Court appoint counsel -- at trial.  Defendant
20   understands, however, that, defendant retains the right to be
21   represented by counsel -- and if necessary have the Court appoint
22   counsel -- at every other stage of the proceeding.

23        d.   The right to be presumed innocent and to have the
24   burden of proof placed on the government to prove defendant guilty
25   beyond a reasonable doubt.

26        e.   The right to confront and cross-examine witnesses
27   against defendant.

28

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

WAIVER OF APPEAL OF CONVICTION AND COLLATERAL ATTACK

21.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.

22.   Defendant also gives up any right to bring a post-conviction collateral attack on the conviction or sentence, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction.

23.   Defendant understands that these waivers include, but are not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

1

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

2      24.  Defendant agrees that, provided the Court imposes a total
3  term of imprisonment on the count of conviction within the statutory
4  maximum, defendant gives up the right to appeal all of the following:
5  (a) the procedures and calculations used to determine and impose any
6  portion of the sentence; (b) the term of imprisonment imposed by the
7  Court; (c) the fine imposed by the Court, provided it is within the
8  statutory maximum; (d) to the extent permitted by law, the
9  constitutionality or legality of defendant's sentence, provided it is
10 within the statutory maximum; (e) the amount and terms of any
11 restitution order; (f) the term of probation or supervised release
12 imposed by the Court, provided it is within the statutory maximum;
13 and (g) any of the following conditions of probation or supervised
14 release imposed by the Court: the conditions set forth in General
15 Order 20-04 of this Court; the drug testing conditions mandated by 18
16 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use
17 conditions authorized by 18 U.S.C. § 3563(b)(7).

18      25.  The USAO agrees that, provided all portions of the sentence
19 are at or below the statutory maximum specified above, the USAO gives
20 up its right to appeal any portion of the sentence, with the
21 exception that the USAO reserves the right to appeal the amount of
22 restitution ordered if that amount is less than $1,732,841.34.

23

24

25

26

27

28









1      COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                      OFFICE NOT PARTIES

3      33.  Defendant understands that the Court and the United States

4  Probation and Pretrial Services Office are not parties to this

5  agreement and need not accept any of the USAO's sentencing

6  recommendations or the parties' agreements to facts or sentencing

7  factors.

8      34.  Defendant understands that both defendant and the USAO are

9  free to: (a) supplement the facts by supplying relevant information

10  to the United States Probation and Pretrial Services Office and the

11  Court, (b) correct any and all factual misstatements relating to the

12  Court's Sentencing Guidelines calculations and determination of

13  sentence, and (c) argue on appeal and collateral review that the

14  Court's Sentencing Guidelines calculations and the sentence it

15  chooses to impose are not error, although each party agrees to

16  maintain its view that the calculations in paragraph 17 are

17  consistent with the facts of this case.  While this paragraph permits

18  both the USAO and defendant to submit full and complete factual

19  information to the United States Probation and Pretrial Services

20  Office and the Court, even if that factual information may be viewed

21  as inconsistent with the facts agreed to in this agreement, this

22  paragraph does not affect defendant's and the USAO's obligations not

23  to contest the facts agreed to in this agreement.

24      35.  Defendant understands that even if the Court ignores any

25  sentencing recommendation, finds facts or reaches conclusions

26  different from those agreed to, and/or imposes any sentence up to the

27  maximum established by statute, defendant cannot, for that reason,

28  withdraw defendant's guilty plea, and defendant will remain bound to

                                 26

1  fulfill all defendant's obligations under this agreement.  Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be within
5  the statutory maximum.

6                    NO ADDITIONAL AGREEMENTS

7       36.  Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10 promise, understanding, or agreement may be entered into unless in a
11 writing signed by all parties or on the record in court.

12          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13      37.  The parties agree that this agreement will be considered
14 part of the record of defendant's guilty plea hearing as if the
15 entire agreement had been read into the record of the proceeding.

16 AGREED AND ACCEPTED

17 UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
18 CALIFORNIA

19 TRACY L. WILKISON
   Acting United States Attorney
20

21

22 ANIL J. ANTONY                          April 7, 2021
   Assistant United States Attorney        Date
23

24 RAMON OLORUNWA ABBAS                     4/7/21
   Defendant                               Date
25

26 LOUIS J. SHAPIRO                         4/7/21
   Attorney for Ramon Olorunwa Abbas       Date
27

28

                              27

## CERTIFICATION OF DEFENDANT

I understand, read, and comprehend English, and I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          _____
RAMON OLORUNWA ABBAS                      Date  4/7/21
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RAMON OLORUNWA ABBAS' attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might

be asserted either prior to or at trial, of the sentencing factors
set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines
provisions, and of the consequences of entering into this agreement.
To my knowledge: no promises, inducements, or representations of any
kind have been made to my client other than those contained in this
agreement; no one has threatened or forced my client in any way to
enter into this agreement; my client's decision to enter into this
agreement is an informed and voluntary one; and the factual basis set
forth in this agreement is sufficient to support my client's entry of
a guilty plea pursuant to this agreement.

LOUIS J. SHAPIRO                           Date
Attorney for Ramon Olorunwa Abbas

29