Louis J. Shapiro, CSB#243756
Law Offices of Louis J. Shapiro
10100 Santa Monica Blvd, Suite 300
Los Angeles, CA 90067
Office: (310) 651-9968
Fax: (310) 772-2246
Email: LouisJShapiro@Gmail.com

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>RAMON ABBAS<br><br>Defendant, | Case No.: 2:20-CR-322-ODW<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION IN SUPPORT OF VARIANCE AND EXHIBITS**<br><br>Date: 9/21/22<br>Time: 1:30 p.m.<br>Place: 5D<br><br>Honorable Otis D. Wright II<br><br>**FILED UNDER SEAL** |

Defendant Ramon Abbas by and through his attorney of record, Louis J. Shapiro, hereby submits this Sentencing Memorandum, setting forth the factors the Court should consider in determining what type of sentence is sufficient, but not greater than necessary to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

DATED: September 5, 2022

Respectfully Submitted,

Law Offices of Louis J. Shapiro

_____/S/_____

Louis J. Shapiro
Attorney for Defendant
Ramon Abbas

# TABLE OF CONTENTS

I.  Introduction……………………………………………………................5

   A.  Procedural Posture……………………………….……………......................7

   B.  Summary of the Argument……………......………………...……………………9

       1.  Biography of Mr. Abbas…………..…………………………………..…9

       2.  The Extent of Mr. Abbas's Involvement........................................................9

II.  Relevant Section 3553(a) Factors……………………………….............….13

   A.  Nature and Circumstances of the Offense and History and Characteristics of the

      Defendant – 18 U.S.C. §3553(a)(1)………………………….…….............….13

       1.  Formative Adolescent Years……………………………………........….14

       2.  Mr. Abbas' Involvement & Actual vs. Intended Loss Disparity ………....16

       3.  Character of Mr. Abbas…………………………………...............………16

   B.  The Purposes of Sentencing – 18 U.S.C. §3553(a)(2)………….................…….17

       1.  The Seriousness of the Offense and Promoting Respect for the Law, and Just
          Punishment…………………………………………………...............……..19

       2.  Disparity in Sentencing………………………………...............……….19

       3.  Deterrence & Protection of The Public…………………...............……….19

III.  The Statutory Sentencing Factors in 18 U.S.C. §3553, §3B1.2 and §3E1.1 Support a

    Variance and Departure……………………………………………………..20

   A.  Mr. Abbas Does Not Have Any Criminal History…………................ 21

   B.  Mr. Abbas was Not the Organizer or Leader of the Offense…….........…22

   C.  Mr. Abbas Is Eligible For a §3B1.2 Mitigating Role Downward

      Departure……………………………………………………...............……….23

       D.  Mr. Abbas Is Eligible For A §3E1.1 Acceptance of Responsibility Downward

          Departure……………………………………………...............……………23

IV.    Request Covid 19 Variance……………………………………………………24

V.     Conclusion…………………………………………………………...............……25

# INDEX OF EXHIBITS

A.  Exhibit A: Work Evaluation While in Custody

B. Exhibit B: DOJ Press Release

C. Exhibit C: Santa Ana College - Attitude For Success Course Completion, 8 classes

D. Exhibit D: Santa Ana College - Attitude For Success Course Completion

E. Exhibit E: Santa Ana College -MS Excel Course Completion

F. Exhibit F: Santa Ana College – Intro To Windows Course Completion

G. Exhibit G: Santa Ana College – Creative Writing Course Completion

H. Exhibit H: Santa Ana College – Attitude For Success Course Completion

I. Exhibit I: Santa Ana College - Attitude For Success, 16 classes

J. Exhibit J: Santa Ana College – Attitude For Success, 24 classes

K. Exhibit K: Stockdale Radiology Confirming Intraluminal Gallstones

L. Exhibit L: Central Valley Annex Covid 19 Confirmatory Test, 11/26/21

M. Exhibit M: DOJ Press Release

N. Exhibit N: DOJ Press Release

O. Exhibit O: DOJ Press Release

P. Exhibit P: ILRC Concerns Over First Step Act: Immigration Analysis

Q. Exhibit Q: DOJ Press Release

R. Exhibit R: Covid Variance Sample

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## <u>INTRODUCTION</u>

Few legal principles are as deeply entrenched in our present jurisprudence as the concept of individualized sentencing. As the Supreme Court, has observed:

> "It has been uniform and constant in the federal judicial tradition
> for the sentencing judge to consider every convicted person
> as an individual and every case as a unique study in the
> human failings that sometimes mitigate, sometimes magnify,
> the crime and the punishment to ensue. Underlying this tradition
> is the principle that the punishment should fit the offender and
> not merely the crime." *Pepper v. United States, 131 S. Ct. 1229, 1239, 1240 (2011).*

Thus, in each case a sentence should reflect an individualized assessment of a particular offender's culpability and potential success in the community rather than a mechanical application of given sentence to a particular category of crime.

This memorandum will investigate and examine Mr. Abbas's background, character, and value system to understand his behavior in this case. **As a life-long, hard-working and ambitious individual, Mr. Abbas's behavior in this case is incongruent with the responsibility he has shown in other areas of his life.**

///

///

### A. Procedural Posture

1.    Mr. Abbas is charged by Indictment with one count – Conspiracy to Engage in Money Laundering. Mr. Abbas was found to be party to this agreement to engage in money laundering due to his knowledge of the illegal nature of the activities that took place. Mr. Abbas, as a friend of the money laundering organizer, was tasked with acquiring bank account information to be used to further the conspiracy.

2.    Pursuant to a binding plea agreement Mr. Abbas entered a plea of guilty to count 2: *Conspiracy to Engage in Money Laundering*. In return, the United States Attorney's Office agreed to recommend a reduction in the applicable Sentencing Guidelines offense level, pursuant to 18 U.S.C. §3553(f). The United States Attorney's Office also agrees to recommend a two-level reduction pursuant to U.S.S.G. § 3E1.1. Additionally,  (b) If he qualified for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

3.    Additionally, the United States Attorney's Office agreed to recommend that Mr. Abbas be sentenced to a term of imprisonment below the calculated range dictated by statute, provided that the United States Attorney's Office determines that Mr. Abbas has complied with his plea obligations. Mr. Abbas agreed to give up the right

to indictment by a grand jury. He also agrees to appear and plead guilty to a single-count Indictment, which charged him with conspiracy to engage in money laundering, in violation of 18 U.S.C. § 1956(h).

4.   Additionally, Mr. Abbas agreed to not contest the facts agreed upon within the plea agreement, appear for all court appearances, not commit any crime, be truthful at all times with Pre-trial Services, and pay the applicable special assessment at or before the time of sentencing provided that he has the ability to make payment.

5.   The Pre-Sentence Investigation Report (PSIR) dated January 10, 2022, pursuant to U.S.S.G. § 5E1.2(a).1, arrives at an adjusted offense level of 33, which the recommended range is imprisonment of 135-168 months. The Defense has filed an objection to the PSR's 3-point Role In the Offense Enhancement.

### B. Summary of the Argument

Mr. Abbas is prepared to accept the sentence the Court finds appropriate, pursuant to the plea agreement filed in this case. Mr. Abbas understands that accepting responsibility for his conduct includes incarceration in federal custody.

As will be discussed in detail, Mr. Abbas, through his lawyer, moves the court to depart and vary from the sentencing guideline factors (33) in the plea agreement based on the following: demonstrating an early acceptance of responsibility (-3), enduring painstaking and crushing covid conditions and being diagnosed with Covid 19 (-2), Mitigating Role (-3), motion made by the government (-4), Ineligibility for First Step Act (-1) and the factors to be considered in imposing a sentence congruent with 18 U.S.C. §3553(a).

In total, Mr. Abbas, through his counsel is entreating the court to vary from the calculated guideline range towards a 13-level reduction to 20 points (33-41 months). This reduction would also enable Mr. Abbas to continue supporting his family in their time of need.

Analysis of the facts of this case and application of §3553 factors favor a mitigated custodial sentence at the court's discretion.

1. **Biography**

Mr. Abbas is a 39-year-old Nigerian national and devoted husband, father, and son.

**He is currently working within his prison cleaning windows and showers—for which he has received great personal evaluations.** See Exhibit A: Work Evaluation While in Custody.

He has three children. His oldest son, now 8-years old, lives in London with his mother. His four-year old daughter lives in New York with her mother. And his three-year old lives in Dubai. At this moment, all his children depend on his continued support.

Until this present matter, Mr. Abbas had embodied entrepreneurialism. Coming from humble beginnings, Mr. Abbas grew up in Bariga, Nigeria. The oldest of three, his mother and father both worked in business within Lagos, Nigeria. Prior to immigrating to the United Arab Emirates, Mr. Abbas attended school in the University of Lagos, Nigeria. Following his completion of secondary school, he enrolled at the University of Nigeria. Shortly thereafter he made the decision to move to Malaysia where he sought to continue his education. He attended university, studying business, for two years.

Throughout this time, he had already started building his own personal shopping and styling business in fashion. In Malaysia, he would work as a social media influencer and promoter—driving business to an 'African'-themed club and promoting Africana artists to a

Malaysian audience. After some time in Malaysia, Mr. Abbas moved to Dubai at the age of 36. In Dubai, he continued building his personal shipping and styling business through networking.

Mr. Abbas comes from a good family **and has not had any prior run-ins with the law.** There has been no barrier—regional, or otherwise—that has stopped Mr. Abbas from pursuing his dream of having his own business. He has worked hard and created opportunities for himself.

His naivete and poor judgement has jeopardized his ability to provide for his family and his future. Additionally, Mr. Abbas's parents have been forced to move to a secret location due to his decisions in this case. Both of his parents are retired and have extensive health issues. They rely on Mr. Abbas now more than ever. Tragically, Mr. Abbas, was unaware of the extent to which this conspiracy reached. He has never been more disappointed in himself and petrified than he is as he presents himself to this Court.

If the Court follows the guidelines, Mr. Abbas faces a prison sentence that could span many years. Indisputably, conspiracy to engage in money laundering is a very serious offense, as reflected by twenty-year statutory maximum in such cases. However, as demonstrated below, Mr. Abbas qualifies for a variance and departure from the guidelines at the court's discretion. Also, a mitigated sentence is not greater than necessary given the circumstances of the case and personal characteristics of Mr. Abbas.

### 2. <u>Putting Mr. Abbas's Involvement Into Context</u>

The statutory sentence guidelines for conspiracy to engage in money laundering is unique in that it does not truly account for the extent, or lack thereof, to which an individual actively knows of their engagement in criminal activity. An individual's role, if

minimal, is subjected to the same standard of punishment as someone who actively engages in, or organizes, the same act.

In this case, an individual was helping co-conspirators conduct financial transactions within, and outside, the United States by laundering money that was fraudulently obtained, and the government is justifiably prosecuting the participants to enact discipline to deter similar acts from taking place.

**The impact that the statutory sentencing guidelines may have on Mr. Abbas is astronomical, and disproportionate to his involvement**. Granted, the law maintains that he is guilty. However, it ignores the fact that Mr. Abbas was not aware of how many individuals were involved in this scheme, neither was he aware of the monetary extent of the scheme. It also disregards that Mr. Abbas has a young family who looks to him to provide and discounts the amount of hard work he has put towards building his career.

The defense is in no way trying to excuse Mr. Abbas's conduct, rather we are asking the Court to mitigate his sentence by awarding him credit where appropriate. Mr. Abbas has been respectful to the government throughout these entire proceedings and has no past criminal history. Mr. Abbas was not the leader, organizer, or supervisor in the commission of this offense. **The scheme that Mr. Abbas became entangled in was already in operation prior to his involvement.** It was being spearheaded by Ghaleb Alaumary and individuals in North Korea, with whom Mr. Abbas had no knowledge. They were indicted in a separate case. See Exhibit B: DOJ Press Release. Therefore, a sentence that varies below the calculated guideline range would be sufficient under these circumstances.

From the moment Mr. Abbas was contacted by agents, he was respectful to law

enforcement and the judicial system as evidenced by his early plea. The government's investigations into Mr. Abbas's case resulted in the indictment of six other individuals in a separate case.

Mr. Abbas has done everything in his power to right his wrongful acts. Mr. Abbas accepts full responsibility and is sincerely remorseful. He poses no threat to be a repeat offender. When we consider his past, present, and potential future we discover a completely different individual in comparison to his conduct in this isolated time in his life. His past reflects a history of family-oriented, ambitious behavior—not criminal activity.

If this Court grants Mr. Abbas a variance and departure in his sentencing, his future includes using this experience to cut off toxic friendships while providing immediate support to his family. Suffice it to say, Mr. Abbas has learned his lesson through this current ordeal.

Mr. Abbas has kept himself busy during this ordeal. Rather than sit and do nothing, he has channeled his entrepreneurial drive towards obtaining several certificates in educational programs offered through the prison system. This includes programs in mental health, psychology, English, and computer classes. See Exhibits C-K. He has also continued to abide by his Muslim faith by observing Ramadan, conducting prayers, and reading several books. He has maintained this success all while suffering from Gallstones and Covid 19. See attached Exhibits K and L.

Based on Mr. Abbas' lack of criminal history, his extraordinary work ethic, his unconditional acceptance of responsibility, and his minimal risk of recidivism, a departure and variation below the sentencing guidelines would be sufficient to reflect the seriousness of the offense, to deter future crimes, to promote respect for the law, to protect the public, and to provide just punishment for the offense as called for by 18 U.S.C. §3553(a)(2)

## II.

### Relevant Section 3553(a) Factors

In *Gall v. United States*, 552 U.S. 385 (2007), the United States Supreme Court advised that in addition to considering the Guidelines, the 'district court should…consider all the 3533(a) factors to determine whether they support the sentence requested by a party. In so doing, [the court] may not presume that the Guidelines range is reasonable. [The court] must make an individualized assessment based on the facts presented." *Gall* at 596-597

The Supreme Court has upheld that "underlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime.' *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229, 1239-1240 (2011), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996), quoting *Williams v. People of the State of New York*, 337 U.S. 241, 247 (1949). The Supreme Court has "emphasized that highly relevant – if not essential – to the selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

The Court must also abide by statutory sentencing facts, such as the nature of the offense, history and characteristics of the defendant, the purpose of sentencing and the avoidance of a disparity in sentencing. 18 U.S.C. § 3553(a).

**A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant per 18 U.S.C. § 3553(a)(1)**

The following was compiled following an extensive interview with Mr. Abbas. Additionally, an in-depth investigation was conducted into Mr. Abbas's personal background and life history. This included a review of his employment history and school records.

### 1.Formative Adolescent Years, College, and Early Career

Mr. Abbas was born on October 11th, 1982 in Bariga, Nigeria. Mr. Abbas was the oldest of three children born to his parents. His parents had lived in Nigeria their entire lives. His father was a civil servant and businessman while his mother also worked as a businesswoman.

Mr. Abbas describes his upbringing as 'normal' and stresses that he had good parents and a decent education. Following his completion of secondary school—the Nigerian equivalent of American High School—Mr. Abbas decided to follow in his parents' footsteps and pursue an education in business at the University of Lagos, Nigeria. Shortly thereafter, Mr. Abbas moved to Malaysia where he enrolled in school to continue his education. During this time, he began realizing his entrepreneurial ambitions. He had established a personal shipping and styling business at 25 which he had continued operating in Malaysia. This was where his social media persona began.

He would promote, and drive business to, Malaysian clubs. This included promoting African artists and afrobeats within Malaysian clubs. By 36, when he had moved to Dubai, Mr. Abbas had survived on his business acumen for over a decade. In Dubai, he continued building his network and business. His business efforts took him to several different countries and rewarded him with an enviable network and a family of his own.

This ordeal has hurt more than Mr. Abbas. His parents have since retired but face a variety of difficulties in Nigeria. His mother is hypertensive and currently has a broken leg while his father is also hypertensive and diabetic.

Once this case is resolved and Mr. Abbas is released, that he will not be able to return to Nigeria. Abubakar Kiyari, a Nigerian politician and police commissioner, operates a death squad. Kiyari was indicted in the Juma case by the government's investigation into this case.

Mr. Abbas hopes to move his family out of Nigeria when he gets out of prison. The looming threat of Mr. Kiyari's supporters, as well as intense media harassment, has forced his family to continue moving to secret locations within Nigeria. They must rent different apartments simultaneously while continuously changing telephone lines. Additionally, his children face the possibility of going through their formative years without their father.

## 2. Mr. Abbas' Involvement & Actual vs. Intended Loss Disparity

In this case, Mr. Abbas was approached by an old friend, Ghaleb Alaumary ("Alamaury"), and was asked to help him procure bank account information. This information was to be used to wire transfer fraudulently obtained funds—the extent of which was unknown to Mr. Abbas. He informed Mr. Abbas that he would be transferred a certain amount of money which Abbas was then to turn around and transfer elsewhere. Mr. Abbas gave the requested bank account information to Mr. Alaumary but never received what Mr. Alaumary had obliged to transfer.

Before Mr. Abbas ever took part in this operation, he had demonstrated that he was an ambitious and hard worker. It is important fact that Alaumary's scheme was in operation well prior to Mr. Abbas's involvement. The scheme was not an idea that Mr. Abbas had nor was it something he helped concoct. Mr. Abbas was unaware that Alaumary had concealed the monetary extent of the scheme.

Initially, Mr. Abbas was contacted by Mr. Alaumary who was residing in Canada at the time. Mr. Alaumary repeatedly reached out and pressured Mr. Abbas to wire $500,000 to Abbas which would eventually be transferred elsewhere. A review of the text message

correspondence reveals a passive Mr. Abbas compared to an aggressive Alaumary who continuously peppers Mr. Abbas for assistance.  Mr. Abbas never came into possession of funds from Alaumary's scheme.

**It's extremely important to recognize that the intended loss and actual loss, in this case, are vastly different. Per the plea agreement, the <u>intended</u> loss is approximately <u>$24,000,000</u> but the <u>actual</u> loss is about <u>$2,000,000</u>.** [1] Out of that amount, Mr. Abbas only received $330,000.00. An honest analysis of the text message exchange between Mr. Abbas and Alaumary shows that Alaumary was nonchalantly mentioning to Mr. Abbas about committing fraud on other entities. Sometimes Mr. Abbas didn't even reply to him. It was more like a wish list from Alaumary which had no chance of ever getting off the ground. Even though they were not reasonably foreseeable to Mr. Abbas, they are causing him to face incredible exposure.

The defense hopes the court follows previous cases where the reasonable foreseeability of the loss was factored into issuing fair and just sentencing: "The court should, however, limit the defendant's liability to acts of others that were reasonably foreseeable and within the scope of the criminal activity that the defendant "agreed to jointly undertake."[2] Because realistically,

---

[1] That's combining both the Alaumary case and the Juma case. The actual loss in Alaumary case is $922,857.76.

[2] See United States v. Lloyd, 807 F.3d 1128, 1142, 1145 (9th Cir. 2015) (in securities fraud case, reversing judgment attributing loss from California telemarketing boiler room to defendant managing Florida boiler room because defendant did not design overall scheme, did not pool resources, and was compensated from commissions from only his operation); United States v. Rodriguez, 751 F.3d 1244, 1256–57 (11th Cir. 2014) (defendant in mortgage scheme was properly attributed with losses associated with fraudulent use of her post office box because she "participated in the conspiracy and did not withdraw from it" and moreover because "rerouting the mail was essential to the success of the fraudulent scheme"); United States v. Arojojoye, 753 F.3d 729, 737–39 (7th Cir. 2014) (defendant was properly attributed with losses caused by codefendants when he created fraudulent documents and false address used in scheme; emphasizing that the district court properly considered supporting evidence "in context and in cumulation"); see also United States v. Sykes, 774 F.3d 1145, 1150–52 (7th Cir. 2014) (analyzing concept of foreseeability in detail).

there was never any contemplation and/or chance of a $24,000,000 loss, Mr. Abbas hopes that the court strongly takes that into account in determining a fair and just sentence.

Mr. Abbas openly admits that he made a serious error in judgment. He refuses to blame anyone but himself. This incident has changed Mr. Abbas's life. He has been sitting in custody because of these decisions. He realizes that his actions do not only impact his future. This also impacts his family's future. While he can't change the past, he can change his future, his attitude and his actions moving forward. He has already taken several positive steps by completing educational classes, working for the Central Valley Annex and doing everything he can to demonstrate his resolve to change.

**B. THE PURPOSES OF SENTENCING** *(18 U.S.C. § 3553(a)(2))*

   **1.** <u>**The Seriousness of the Offense and Promoting Respect for the Law, and Just Punishment**</u> *<u>(18 U.S.C. § 3553(a)(2)(A)).</u>*

Promoting respect for the law means more than merely doling out harsh punishment. As noted by the Supreme Court in *Gall v. United States, 128 S. Ct at 599*, an overly harsh sentence "may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." This category reflects the need for general deterrence. In other words, when an individual makes the decision to distribute methamphetamine, they should be able to see what punishment they face. It should be a punishment that would make them reconsider the action they are about to commit.

For the past several years, Mr. Abbas has supported his family in every way he could. His children and parents all rely on him. His involvement in this ordeal has not only jeopardized his future but has also put his family at serious risk of excessive public exposure and potentially violence. Mr. Abbas regrets his involvement. It has created a stressful situation at home and has left him in a dreaded state of the unknown.

Throughout this process he has been facing a prison sentence to an unknown amount of time. But this has not deterred him from keeping himself busy by working in prison, for which he has received great evaluations, or continuing his education, for which he has received several certificates. He has also remained steadfast in his religious observance and has continued to maintain contact with children and parents. He has also helped the prosecution in any way he can during this process.

Immediately following the indictment, Mr. Abbas showed only the utmost respect for the law. The court is also permitted to consider Mr. Abbas' immediate display of remorse for §3553(a)(2) (A)-(C) purposes of measuring Mr. Abbas' respect for the law, affording adequate deterrence to criminal conduct; and protecting the public from further crimes of the defendant.

Mr. Abbas's consistent show of respect to the court and government, couples with the fact that he has been an upstanding prisoner since he was indicted, demonstrates his utmost respect for the law. It provides assurances that he will never repeat this conduct again, and that he no longer poses a threat to the public.

He does not have a criminal record in his thirty-nine years prior to this incident and he intends for this to be his last.

### 2. Disparity in Sentencing

Section §3553(a)(6) requires that the Court consider 'the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.' Here are some comparable cases:

In October of 2018, U.S. District Judge William B. Conley sentenced Clement Onuama to 40 months in federal prison and ordered him to pay $409,639.00 in restitution. The actual loss amount in that case was $1,076.602. See Exhibit M.

In February of 2019, Babajide Awogbami was sentenced by Judge William E. Smith to 13 months in federal prison and ordered to pay $488,745.47 restitution to banks he defrauded. He pleaded guilty to conspiracy to commit bank fraud and false use of passports. See Exhibit N.

In October of 2018, Judge Scott C. Blader sentenced Orefo Okeke to 45 months in federal prison, to be followed by one year of supervised release, and ordered him to pay $582,955.90 in restitution. Okeke was found responsible for causing a fraud loss of $1,101,038. **The judge factored into his penalty analysis the fact that Okeke was a Nigerian citizen, and that he would in all likelihood be deported back to Nigeria upon his release from federal prison.** See Exhibit O.

**Mr. Abbas is similarly situated to Mr. Okeke from an <u>immigration</u> position as well.** Non-citizens are ineligible for participation in The First Step Act, which would typically allow someone to reduce their sentence down to 65%. See Exhibit P. Mr. Abbas has already taken many college classes and would genuinely utilize The First Step Act if he was able to. **In recognition of this disadvantage, Mr. Abbas hopes that this Court will <u>depart by 1 level.</u>**

In December of 2017, Judge Paul A. Crotty sentenced David Adindu to 41 months in prison for participating in a wire fraud conspiracy and identity theft conspiracy. The charges stemmed from Adindu's participation in fraudulent business email compromise scams that targeted thousands of victims around the world, including the United States. Collectively, the scams attempted to defraud victims of more than $25 million. He was ordered to pay over $1.4 million in restitution. See Exhibit Q.

Mr. Abbas' request for sentencing (33-41 months) is in line with the comparable cases. And that's before getting into other applicable departures and variances.

### 3.   <u>Deterrence & Protection of The Public</u> *(18 U.S.C. § 3553(a)(2)(B) & (C)*

Mr. Abbas acknowledges his conduct was wrong and will never do it again. He has cut off ties with all bad influencers. In fact, he has not even spoken to Alamaury since the beginning of this case.

This ordeal has brought him and his family anxiety and uncertainty. He knows that his life will likely never be the same. But he is not an evil mastermind or anything of that nature. A

significant prison sentence is not going to deter Mr. Abbas any more than a sentence of 33-41 months will. He has learned his lesson.

Mr. Abbas does not pose a danger to the public now nor will he in the future.

**III.**

**THE STATUTORY SENTENCING FACTORS IN 18 U.S.C. § 3553, §3E1.1 AND §3B1.2 SUPPORT A VARIANCE AND DEPARTURE BELOW THE GUIDELINES**

Core principles in sentencing have now been resolved by the Supreme Court in *United States v. Booker*, 125 S. Ct. 738, (2005), *Gall v. United States*, 128 S.Ct. 586, 591 (2007) and *Kimbrough v. United States*, *552 U.S. 85, 128 S.Ct. 558(2007.)*

The Guidelines are not only not mandatory on sentencing courts; they are also not to be presumed reasonable.

*Nelson v. United States, 129 S.Ct. 890,891 (2009).*

What the Supreme Court has described as the "overarching provision" of 18 U.S.C. § 3553(a) is set forth in that provision's very first sentence – that "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in subparagraph (2) of this subsection." *Kimbrough v. United States*, *128 S. Ct. at 570 (2007).* This description by the Supreme Court makes clear that this "parsimony principle" is not mere precatory language, but is a key – in fact, *the* key – requirement that a sentence must satisfy. Thus, factors justifying a sentence outside the guideline *are no longer required to be "extraordinary." Gall, 168 S.Ct. at 595*.

Congress could not have been clearer in directing that no limitation ... be placed on the information concerning the background, character, and conduct of a defendant that a district court may receive and consider for the purpose of

imposing an appropriate sentence…Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant."

*Pepper, 131 S.Ct at 1240.*

Thus, the challenge in this case is to deliver a sentence that reflects the seriousness of the offense, promotes respect for the law violated in this case, and to provide just punishment for the offense. Additionally, the court's sentencing must serve to deter future criminal conduct and protect the public from any future crimes the defendant may engage in. This must be a fair sentence that is sufficient, but not greater than necessary. A sentence that is too severe is unjust, and therefore, also fails to promote respect for and confidence in the law.

When examining Mr. Abbas's life, we find a success story. He was born into humble beginnings in the middle of Nigeria. Through his own independent agency, he excelled through various small business ventures that took him to several countries, such as France, Italy, Netherlands, Mocano, Greece, Cyprus and many more – mostly for fashion and styling business purposes.

He used poor judgment and got involved with bad people. This is an aberration, albeit a big one, on an otherwise successful career. Given the factors that will be discussed, it is reasonable that the Court departs and vary from the calculated guideline range.

**A.  THE DEFENDANT DOES NOT HAVE ANY CRIMINAL HISTORY** *(18 U.S.C. § 3553(f)(1))*

Promoting respect for the law requires that any punishment doled out be sufficient, but not more than necessary. As noted by the Supreme Court in *Gall v. United States*, *128 S. Ct at*

*599*, an overly harsh sentence "may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without considering the real conduct and circumstances involved in sentencing. This category reflects the need for general deterrence. In other words, the Court needs to be sure that a safety valve exception is not granted to an individual who is likely to commit crimes in the future. This likelihood is gauged by whether an individual has a criminal history.

Mr. Abbas has resided outside the United States for most of his life. He has no previous criminal history. His actions in this case should not be understood as indicative of what his behavior will be moving forward.

## B.  THE DEFENDANT WAS NOT THE ORGANIZER OR LEADER OF THE OFFENSE

Section 3553(f)(4) states that the Court should consider whether the defendant was the leader or organizer of the criminal activity. There is no dispute that this scheme was already in motion prior to his involvement.

The main offender, Alaumary, was the leader and organizer whereas Mr. Abbas was just used for one part of the scheme - to coordinate bank accounts for the scheme. The text message exchanges between them clearly place Alaumary in the driver's seat. They show Alaumary berating Mr. Abbas about where Alaumary can send money from schemes that Alaumary was orchestrating. In hindsight, Mr. Abbas wishes he would have ignored Alaumary's pleas for assistance.

If a defendant has a leadership role, then it indicates that their involvement goes beyond action and involves significant mental culpability. Mr. Abbas had no such mental

culpability. Alamaury was the quarterback. Mr. Abbas was not on the same playing field as Mr. Alamaury.

## C.  MR. ABBAS IS ELIGIBLE FOR A §3B1.2 MITIGATING ROLE DOWNWARD DEPARTURE

Pursuant to §3B1.2, based on the defendant's role in the offense, a court should decrease the offense level as follows: (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels. (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.

Mr. Abbas was not the mastermind of this operation, and it was in place well before Mr. Abbas entered the picture. Mr. Abbas was at the bottom of the totem pole. While he knew that what Alaumary was doing was illegal—he did not know the extent of his crimes. He was not aware of any North Korean involvement nor was he aware of any other involved individuals. **Therefore, the defense requests that the court consider a downward departure of 3 levels**.

## D.  MR. ABBAS IS ELIGIBLE FOR A §3E1.1 ACCEPTANCE OF RESPONSIBILITY DOWNWARD DEPARTURE

Pursuant to §3E1.1, (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, the Court should decrease the offense level by 2 levels. Additionally,  (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the

government and the court to allocate their resources efficiently, decrease the offense level by 1 additional level.

Mr. Abbas pled guilty early in the proceedings and has maintained his acceptance of responsibility throughout this case. Therefore, the defense requests that the court consider a decrease by 3 levels.

## IV.

## COVID-19 VARIANCE

Mr. Abbas has spent almost the entire Covid-19 pandemic in prison in the functional equivalent of solitary confinement – up to 1 year. It presented major difficulties for him. He contracted Covid-19, despite being vaccinated. See Exhibit L.

While being ill with Covid, he was given very poor medical treatment. He was put in solitary confinement, had his phone call privileges taken away—as if he was being punished—and was only given inhalers and antibiotics to treat his symptoms. He was cold, fatigued, and was running high temperatures. The food quality was poor, low in quantity, and was delivered in a styrofoam cup. He had no access to television or entertainment and was not allowed to make his own food. He was not even told which Covid-19 variant he had.

When the Covid pandemic started in 2020, Mr. Abbas was not able to leave his cell for more than 1 hour per day, for approximately 3 days per week. This went on for about 1 year. It troubled the Defense to the point where I contacted the ACLU to see if they could pursue legislation to award more credit than usual for inmates that were serving custody time under grueling and punishing Covid 19 conditions.

In addition to his Covid-19 experience, Mr. Abbas has dealt with severe gallbladder pain. See Exhibit K. He has intraluminal gallstones which have given him severe cramps that

last up to 2-3 hours per day. He has had to try to avoid certain foods to prevent these cramps which is problematic considering that most of the food the prison serves, like bologna, leads to those cramps.

The prison will not treat his condition nor provide the surgery he needs to take out his gall bladder. The only treatment he has received has come in the form of Tylenol and acid reflux pills. He also suffers from high cholesterol, high blood pressure, and diabetic-related health challenges.

The Central District Courts have routinely recognized the severe physical and emotional toll that Covid 19 has taken on the inmates and have applied two-level variance to their sentence. See Exhibit R. This request is also referenced in the plea agreement.[3] Therefore, Mr. Abbas respectfully requests this Court to display compassion and apply the Covid 19 two-level variance.

**V.**

**CONCLUSION**

Mr. Abbas is before the Court for sentencing. He entered an immediate guilty plea to conspiracy to engage in money laundering. Mr. Abbas is truly ashamed and embarrassed by his behavior. Nevertheless, he stands before the Court and requests compassion and understanding. He looks forward to providing full restitution and is fortunate to have the ability to do so.

He has battled adversity throughout his life and has never complained, nor has he ever made an excuse. He has always done what he can to be a help to his friends and family.

---

[3] Pg. 19, lines 4-6.

Extensive time in federal prison should be reserved for those who show minimal hope for redemption and change. Mr. Abbas has already committed to changing his lifestyle and is relied upon by his family to help them in their times of need.

Mr. Abbas has spent his time in prison working and reflecting on his actions. He acknowledges that what he did was wrong and must now face the reality that he will likely never fully recover from this experience. His personal and professional reputation has been decimated. The stigma of this case will live with him and his family for the rest of his life. His children, who are all eight years old and younger, have had their pictures posted on social media for the entire world to see. His parents must now think twice before they leave their home out of concern for their own safety.

Mr. Abbas has let his entire family down. Most people facing this type of public exposure would have gone into despair and given up. But Mr. Abbas turned this into an opportunity to turn his life around and make himself into a better, more accomplished person.

Nobody benefits from Mr. Abbas continuing to languish in prison – not his family, not his parents not society. Mr. Abbas is proving to everyone that one need not be in prison for years on end to have learned their lesson.

It is respectfully requested that the Court impose a sentence below the statutory guideline range - rather at a level 20 (33-41 months). The defense feels that 33-41 months of incarceration for Mr. Abbas would be sufficient, but not greater than necessary. It strikes a fair balance between Mr. Abbas's disappointing conduct, lack of criminal history, and promise for him to take the lessons he learned in this case and channel his ambition in a lawful way that benefits both his family and society. Mr. Abbas also hopes that the Court will award him credit

and/or recommend it to the BOP, from the time that he was arrested in Dubai which was in June of 2020.


DATED: September 5, 2022                          Respectfully Submitted,


                                                 Law Offices of Louis J. Shapiro


                                                 _____/S/_____
                                                 Louis J. Shapiro
                                                 Attorney for Defendant
                                                 Ramon Abbas