national IMMIGRATION project of the national lawyers guild ilrc NATIONAL IMMIGRANT JUSTICE CENTER A HEARTLAND ALLIANCE PROGRAM IDP IMMIGRANT DEFENSE PROJECT ijn IMMIGRANT JUSTICE NETWORK Fairness & Justice for Immigrants

**Concerns over First Step Act: Immigration Analysis**
**December 2018**

Our organizations understand the tremendous need to enact criminal justice reform and we are encouraged by some provisions in the First Step Act that would reduce disparities. However, it is clear that the First Step Act excludes and penalizes immigrants, and ultimately, may harden disparities when it comes to noncitizen residents of the United States.

- It is deeply unfortunate that the current legislative proposal reduces the bill's impact based upon one's immigration status and, at the same time, sets the precedent that immigrants are outside the scope of people who should benefit from criminal justice reform.
- The bill singles out illegal re-entry of migrants in a troubling way. It solidifies the notion that migrant crossings are national security and public safety threats.
- Overall, this bill gives Trump tools to double down and exacerbate the problems created by former Attorney General Sessions' policy on zero tolerance. These are the same kinds of policies that led to the family separation crisis earlier this year.

Some Statistics:

Federal immigration prosecutions of immigrants for immigration related conduct constitute half of all federal prosecutions. A significant percentage are former legal permanent residents. The majority of illegal reentry offenders were sentenced to imprisonment (97.3%).

What is the experience of federal prisoners presumed to be noncitizens? Noncitizens currently make up a significant portion of the federal prison population as a result of these prosecutions, estimated between 20-24%. Many of them had legal status in the United States, as legal permanent residents or temporary protected status holders. While the majority of federal prisoners are convicted for drug offenses and public order offenses, immigration violations were the most serious offense of 7.7 percent of all prisoners under federal correctional authority in 2016. This means that a significant percentage of the noncitizen population will never see the benefits of First Step.

Analysis:

- Nearly all immigrants prosecuted for illegal reentry (8 USC §1326) will be excluded from the benefits of First Step, placing illegal reentry into the most serious class of offenses.

- The noncitizen exclusions in First Step funnel anyone presumed to be a deportable noncitizen, including undocumented individuals and green card holders, into the so-called "Institutional Hearing Program," (IHP), an already problematic program that undermines due process protections and is not even accessible in many BOP facilities. It would force people to undergo IHP as a condition for even applying for time credits. This will inevitably skew outcomes to deportations (i.e. removal orders) instead of full court hearings.

- By excluding certain noncitizens from the new "time credit" as defined in First Step, this bill will, in effect, continue disparities within existing Bureau of Prison policy, which excludes suspected noncitizens from early release and rehabilitation programs.[1] BOP's troubling record over immigration matters makes it uniquely unqualified to make decisions about immigration status. BOP already treats alienage as a public safety factor in classifying a prisoner's security status, which means the inmate cannot serve their sentence in a minimum security facility, from working beyond the perimeter of the institution, receiving furlough or serving the last ten percent of their sentence in a halfway house. They also cannot benefit from early release provisions laid out in the Residential Drug Abuse Program (RDAP). This program is an immensely beneficial and cost-saving program, and BOP's view of who is a noncitizen is often incorrect.

- The bill will also prohibit people who are "subjects of" final orders of removal from applying for time credit. This provision is confusing and is the wrong benchmark for determining who should be excluded from applying for new "time credit." The way this provision is written would result in excluding nearly every noncitizen from ever applying for time credit – from those picked up in workplace raids, to illegal re-entry to using someone's else documents to work. Moreover, many people receive final orders of removal due to a lack of proper notice and could still be eligible for relief from removal.
    - The government often overreaches on what should be construed as a final order of removal and has lost on this issue seven times at the Supreme Court.[2] Many will have final orders of removal that are now unlawful or could be unlawful. This bill would sweep in people who are subjects of those unlawful orders of removal.

**For more questions:**
**paromita@nipnlg.org, Paromita Shah, National Immigration Project of the NLG**
**shafiz@ilrc.org, Sameera Hafiz, Immigrant Legal Resource Center**
**haltman@heartlandalliance.org, Heidi Altman, National Immigrant Justice Center**
**awellek@immigrantdefenseproject.org, Alisa Wellek, Immigrant Defense Project**

---

[1]Jacob Schuman, The Marshall Project, "Federal Prisons Don't Even Try to Rehabilitate the Undocumented," Oct. 17, 2017, https://www.themarshallproject.org/2017/10/17/federal-prisons-don-t-even-try-to-rehabilitate-the-undocumented.

[2] *Moncrieffe v. Holder*, 133 S. Ct. 1678 (2013); *Kawashima v. Holder*, 132 S.Ct. 1166 (2012); *Carachuri-Rosendo v. Holder*, 130 S.Ct. 2577 (2010); *Mathis v. United States*, 136 S. Ct. 2243, 2248 (U.S. 2016); *Descamps v. United States*, 133 S. Ct. 2276 (2013); *Taylor v. United States*, 495 U.S. 575 (1990).